# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
John Taylor

## DEFENDANTS
Bollinger Innovations, Inc. f/k/a Mullen Automotive, Inc. and David Michery

**(b)** County of Residence of First Listed Plaintiff: Oakland County (Michigan)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Orange County (California)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
R.J. Cronkhite (P78374) and Christopher A. Chesney (P80969)
Cronkhite Counsel PLLC, 36800 Woodward Ave, Ste. 310, Bloomfield Hills, MI 48304
T: (248) 309-8602 / rj@cronkhitelaw.com / chris@cronkhitelaw.com

Attorneys *(If Known)*

County in which action arose: Oakland

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [x] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Breach of Contract, Violation of Michigan and California's Whistleblower Protection Act, Violation of California's Labor Code, Fraud

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** >$75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: October 28, 2025

SIGNATURE OF ATTORNEY OF RECORD: /s/ Christopher A. Chesney

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed? ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.) ☐ Yes ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

   Notes : _____

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JOHN TAYLOR**, an individual,

    *Plaintiff*,

v.

**BOLLINGER INNOVATIONS, INC.**
f/k/a **MULLEN AUTOMOTIVE, INC.**,
a Delaware corporation, and
**DAVID MICHERY**, an individual,

    *Defendants.*

Case No. 2:25-cv-13428
Hon.

**JURY TRIAL DEMANDED**

R.J. Cronkhite (P78374)
Christopher A. Chesney (P80969)
Cronkhite Counsel PLLC
*Attorneys for Plaintiff*
36800 Woodward Avenue, Ste. 310
Bloomfield Hills, MI 48304
T: (248) 309-8602
F: (248) 256-2555
rj@cronkhitelaw.com
chris@cronkhitelaw.com

**COMPLAINT AND JURY DEMAND**

Plaintiff John Taylor ("**Taylor**"), through his attorneys Cronkhite Counsel PLLC, files his Complaint and Jury Demand against Defendants Bollinger Innovations, Inc. f/k/a Mullen Automotive, Inc. ("**Mullen**") and David Michery ("**Michery**"), for the below reasons:

**NATURE OF THE DISPUTE**

1. Defendant Mullen is a leading American automotive and electric vehicle manufacturer. Defendant Michery is Mullen's chief executive officer ("**CEO**") and a member of its board of directors. Defendants first hired Plaintiff Taylor as Mullen's VP of Advanced Manufacturing and Strategic Planning in April of 2022. But despite Taylor's success at Mullen, Defendants refused to pay Taylor as contracted under

his employment contracts. Defendants' fraudulent misrepresentations induced Taylor to continue his employment, which resulted in Defendants' receipt of millions of dollars through self-dealing stock shares and violations of Taylor's contract. Taylor was forced to seek legal assistance for Defendants' breaches of the employment contracts. Taylor also reported actual and suspected violations of Michigan and California employment and wage laws, federal laws, and common law violations to his attorney. Taylor's pursuit of his contracted benefits and wages resulted in Defendants' retaliation culminating in Taylor's constructive termination on August 1, 2025. Defendants' fraudulent misrepresentations, retaliation, and failure to abide by Taylor's employment contracts were violation of Michigan and California law, including Michigan's Whistleblower Protection Act, M.C.L. § 15.362 *et seq*. ("**Michigan's WPA**"), California's Whistleblower Protection laws ("**California's WPA**"), and California's Labor Code.

## PARTIES

2. Plaintiff Taylor is an individual residing in the City of White Lake, Oakland County, Michigan and citizen of the state of Michigan.

3. Defendant Mullen is a Delaware corporation with its principal place of business located in Brea, California and is a citizen of the state of California.

4. Upon information and belief, Defendant Michery is an individual residing in Los Angeles County, California and is a citizen of the state of California.

5. Defendant Mullen and Defendant Michery conduct business within the state of Michigan, including, but not limited to, Troy and Oak Park, Oakland County, Michigan.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between, on the one hand, Plaintiff Taylor, and, on the other hand, Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

2

7. With respect to any claims asserted herein that fall outside of the Court's original subject matter jurisdiction, the Court has subject matter jurisdiction pursuant to pursuant to 28 U.S.C. § 1367 because all of the claims asserted arise out of a common nucleus of operative facts and form part of the same case or controversy.

8. This Court has personal jurisdiction over Defendant Mullen pursuant to M.C.L. § 600.711 because Mullen carries on a continuous and systematic part of their general business within the State of Michigan.

9. This Court has personal jurisdiction over Defendant Michery pursuant to M.C.L. § 600.705 because Michery regularly transacts business within, and entered into a contract for employment services, to be rendered in the State of Michigan.

10. This Court also has personal jurisdiction over all Defendant Michery pursuant to M.C.L. § 600.705, and over Defendant Mullen pursuant to M.C.L. § 600.715, because each Defendant committed torts within the State of Michigan and the consequences of those torts also occurred within the State of Michigan, as set forth herein.

11. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

**GENERAL ALLEGATIONS**

12. Taylor has over 35 years of automotive experience and has been involved in multiple product launches across the automotive industry for leading manufacturers.

13. Taylor first joined Mullen in 2021.

14. In March of 2024, Mullen offered Taylor a promotion to become Mullen's VP of Advanced Manufacturing and Strategic Planning.

15. Michery, as Mullen's CEO, signed Taylor's offer letter.

3

16. The offer letter provided Taylor with $300,000.00 in base annual salary per year, plus 30,000 shares of common stock for Taylor's yearly anniversaries.

17. The offer letter specified that Taylor would be "vested in 100% of the shares after 12 months of continuous service."

18. Taylor accepted and commenced work as VP under his First Employment Contract.

19. Taylor performed his duties as VP faithfully and professionally.

20. Taylor's performance resulted in financial success for Mullen as a company, Mullen's board of directors, and Michery personally.

21. Taylor's success resulted in Mullen's board of directors, including Michery, awarding themselves large bonuses resulting from Taylor's success and performance.

22. Yet Taylor did not receive his full pay and compensation as contracted under the First Employment Contract.

23. Instead, despite his success, on January 4, 2024, Mullen and Michery terminated Taylor.

24. Mullen's termination letter falsely claimed Taylor's termination was "for cause"—yet the letter failed to identify any actual cause.

25. News of Taylor's surprise and illegal termination resulted in Mullen's publicly traded stock to plummet.

26. Due to the fallout, later in the day on January 4, 2024, Mullen and Michery publicly denied and recanted the termination, falsely announcing Mullen never terminated Taylor—despite paperwork to the contrary, including the termination letter.

27. Michery then contacted Taylor and attempted to have him return to Mullen as if nothing happened.

28. Taylor declined to return given Mullen's mistreatment of him, among other issues.

29. The next day, on January 5, 2024, Mullen emailed Taylor a new offer letter and enclosed a new employment agreement, the Second Employment Offer.

30. To entice Taylor to return to Mullen, the Second Employment Offer not only offered to reinstate Taylor, but provided new benefits and retained prior benefits from the First Employment Contract, including: a) new "incentive compensation"; b) retained and carryover entitlement to 30,000 restricted shares of common stock in Mullen—on an annual basis; c) provisions protecting Taylor from future wrongful acts and termination, including constructive discharge; and d) provisions specifying that Taylor would be entitled to one year's worth of salary if Mullen terminated Taylor for reasons other than for cause.

31. Taylor rejected Mullen's January 5, 2024 Second Employment Offer.

32. Instead, Taylor demanded multiple prerequisites and additional assurances be added to the Second Employment Offer before he would return to Mullen.

33. Later, also on January 5, 2024 at approximately 10:00 AM, Michery and Mullen representative James Taylor met with Taylor regarding the multiple additional prerequisites for Taylor to return to Mullen.

34. Michery made numerous misrepresentations during this meeting on behalf of, and in the interest of, both Mullen and himself, personally.

35. Michery's misrepresentations included his and Mullen's joint willingness, intent, and agreement to bound by any re-negotiated contract, any new assurances, or previously overdue and owed benefits.

36. On January 5, 2024, Mullen, Michery, and Taylor agreed to modify the proposed Second Employment Offer by inserting additional assurances, benefits, and prerequisites, including a) a newly specified $300,000.00 2023 production bonus, in addition to the new incentive compensation; b) a new 2024 performance award; c) authorization and release for Taylor to sit as a board member for a non-competing company; and d) reaffirmation that Mullen issue Taylor's outstanding shares of common stock originally owed

5

under the First Employment Contract—then amounting to 45,000 shares for 1.5 years—once Mullen's stock blackout ended; and e) additional supervisory authority over Mullen's Tunica, Mississippi facility "so that all operations report to [Taylor]."

37. Mullen and Michery agreed to these additional assurances, benefits, and prerequisites added to Mullen's Second Employment Offer by executing an updated agreement.

38. But Mullen and Michery breached the Second Employment Contract almost immediately after execution.

39. First, Mullen and Michery refused to pay Taylor the $300,000.00 production bonus for 2023.

40. Second, Mullen and Michery refused to issue Taylor his performance award for 2024.

41. Third, Mullen and Michery refused to issue Taylor's 45,000 shares originally owed under the First Employment Agreement, and reaffirmed under the Second Employment Contract, despite Mullen's stock blackout period ending on February 15, 2024.

42. Taylor repeatedly demanded issuance of these benefits, but Mullen and Michery refused.

43. Indeed, to date, and after more than three years of employment, Mullen and Michery have never issued Taylor a single share under his employment contracts that are due and owing.

44. Mullen and Michery's refusal to adhere to the Second Employment Contract, breaching that contract, occurred notwithstanding Taylor's stellar performance in 2024.

45. Once again, Taylor's continued success resulted in Mullen's board of directors, including Michery, awarding themselves large bonuses resulting from Taylor's success and performance.

46. In fact, on August 6, 2024, Mullen and Michery promoted Taylor to President of the Commercial EV Division.

47. In addition to his new President role, Taylor retained his role as SVP of Global Manufacturing.

48. On August 7, 2024, Mullen publicly announced Taylor's promotion to President of Commercial EV Division.

*49.* As part of his promotion, Mullen and Taylor entered into a third contract. **Exhibit 1,** ***Third Employment Contract***.

50. The *Third Employment Contract* provides new employment benefits, compensation, and entitlements, in addition and on top of Taylor's prior Second Employment Contract, including: a) Taylor's annual salary was increased to $360,000.00; and b) Taylor's annual share entitlement in Mullen was increased to 75,000 shares per year of employment. **Ex. 1.**

51. Further, the *Third Employment Contract* expressly retained, and incorporated, Taylor's prior entitlements from the Second Employment Contract. **Ex. 1**.

52. The *Third Employment Contract* imported the prior entitlements from the Second Employment Contract: a) because as of August 6, 2024, Mullen and Michery had still failed to deliver on the previously contracted benefits; and b) to reaffirm that Mullen pay Taylor production bonuses and performance awards annually.

53. Since the *Third Employment Contract* was executed, though, Mullen and Michery refused to honor the contracts.

54. Instead, Michery and Mullen, through and including Mullen's board of directors, bore the fruit of their fraud upon Taylor and Taylor's hard work by issuing stock splits of Mullen's publicly traded stock, devaluing Taylor's still-outstanding and owed stocks, and retaining millions of dollars from the stock sale for Michery and Mullen's board of directors.

55. Taylor has repeatedly tried to resolve Mullen's failure to comply with his various employment agreements, including through personal meetings, phone calls, emails, and letters.

7

56. On March 10, 2025, Taylor emailed Mullen and Jillian Green, SVP of Business & Legal Affairs, once again notifying Mullen of its breaches of the contracts and *Third Employment Contract*, demanding Mullen honor the contract's payment and share-issuance provisions.

57. But Mullen, Michery, and SVP Jillian Green refused to respond to Taylor's March 10 letter, let alone cure any of the contractual breaches.

58. Due to Mullen's continued refusals, on June 26, 2025, Taylor sent Defendants another demand letter, demanding all contractual breaches to be cured by July 7, 2025.

59. Defendants refused to formally respond to the June 26, 2025 demand letter, let alone cure any of the contractual breaches.

60. Instead, Defendants wrongly accused Taylor of resigning his position despite Taylor continuing to dutifully and actively work for Mullen.

61. Defendants then retaliated against Taylor for reasserting his entitlement to contractual benefits, retaining legal counsel for assistance, and notifying Defendants of violations of Michigan and California employment and wage laws, actual and suspected violations of federal law, and violations of common law.

62. Defendants also retaliated by diminishing and/or entirely eliminating Taylor's responsibilities and supervisory authority as both President of the Commercial EV Division and SVP of Global Manufacturing Operations.

63. Defendants' actions and omissions constructively discharged Taylor under common law and the terms of the *Third Employment Contract*.

64. Defendants' constructive discharge of Taylor permitted Taylor to "terminate his employment, and such termination shall be considered to be a Termination by the Company for Reasons Other than Cause." **Ex. 1, ¶** 4.03.

65. On August 1, 2025, Taylor exercised his rights under the *Third Employment Contract* due to Mullen's common law and contractual constructive discharge of Taylor.

66. To date, Mullen has failed to cure any of the longstanding breaches, including the 90-day deadline to pay Taylor "an amount equal to [Taylor's] Annual Compensation at the time of such termination." **Ex. 1**.

## COUNT I
### Breach of Employment Contract (Third Employment Contract)
### [Against Mullen Only]

67. Plaintiff Taylor incorporates the preceding allegations as if fully restated below.

68. The *Third Employment Contract* is a valid and enforceable contract. **Ex. 1**.

69. The *Third Employment Contract* expressly retained, and incorporated, Taylor's prior entitlements from the Second Employment Contract. **Ex. 1.**

70. Mullen breached the *Third Employment Contract* by refusing to fulfill and perform its obligations under the *Third Employment Contract*, including, but not limited to, fulfilling its obligations of the incorporated Second Employment Contract, payment of Taylor's $300,000.00 2023 production bonus, issuance of Taylor's annual performance award for 2024, issuance of Taylor's annual performance award for 2025, issuance of Taylor's contractually-assigned Mullen shares, and all other benefits overdue and owing under the *Third Employment Contract*.

71. Michery's misrepresentation, actions, and omissions in breaching the *Third Employment Contract* were made on behalf of Mullen.

72. Taylor has suffered damages because of Defendants' breaches of the *Third Employment Contract*.

73. In addition to the other contractual damages, Mullen's termination of Taylor for "a reason other than cause" now entitles Taylor to payment of "an amount equal to [Taylor's] annual compensation at the time of such termination," i.e., an additional $360.000.00. **Ex. 1.**

9

74. Mullen must pay this amount "no later than 90 days after the date of such termination"—i.e., October 1, 2025. **Ex. 1.**

75. To date, Mullen failed to issue payment for this post-termination contractual provision.

76. As a direct and proximate result of Defendants' actions and breaches of the *Third Employment Contract*, Taylor has been placed in financial distress, suffered loss of wages and benefits, loss of earning capacity, and loss of ability to work; and will continue to suffer these losses in the future.

77. As a direct and proximate result of Defendants' actions and breaches of the Th*ird Employment Contract*, Taylor has also suffered depression, emotional and physical distress, mental and physical anguish, humiliation, loss of reputation and embarrassment, and the physical manifestations of these problems, and will continue to suffer these problems in the future.

78. As a direct and proximate result of Defendants' actions and breaches of the *Third Employment Contract*, Taylor is entitled to damages in an amount greater than $75,000.00 against Mullen, including actual, treble, compensatory, exemplary, special, and punitive damages, plus interest, costs, expenses, and attorney's fees.

## COUNT II
### Violation of Michigan's Whistleblower Protection Act, M.C.L. § 15.362
### [Against Mullen and Michery]

79. Plaintiff Taylor incorporates the preceding allegations as if fully restated below.

80. At all relevant times, Taylor was an employee of Mullen and Michery as defined under Michigan law.

81. At all relevant times, Mullen and Michery were employers of Taylor as defined under Michigan law.

82. While employed by Mullen and Michery, Taylor engaged in protected activities under Michigan's WPA.

83. While employed by Mullen and Michery, Taylor notified individuals with authority over him that Defendants were in actual and suspected violation of their obligations under the *Third Employment Contract*, Michigan employment and wage laws, and California employment and wage laws.

84. While employed by Mullen and Michery, Taylor further notified individuals with authority over him that he would take further action, including but not limited to, reporting the actual and suspected violations to a public body if Defendants did not cure their violations.

85. Defendants believed that Taylor did, or would, engage in protected activity in the future.

86. Taylor later reported Defendants' violations to his attorney.

87. In retaliation for believing that Taylor did or would engage in protected activity, and for Taylor in fact engaging in protected activities under Michigan's WPA, Defendants took adverse actions against Taylor, including diminishing and/or entirely eliminating Taylor's responsibilities and supervisory authority and constructively terminating Taylor.

88. Defendants' adverse employment actions against Taylor were directly connected to, and caused by, Defendants' belief and Taylor engaging in the above-mentioned protected activities.

89. Defendants lacked any legitimate, independent reason to terminate Taylor.

90. Any legitimate, independent reason offered by Defendants to terminate Taylor is mere pretext.

91. As a direct and proximate result of Defendants' violations of Michigan's WPA, Taylor has been placed in financial distress, suffered loss of wages and benefits, loss of earning capacity, and loss of ability to work; and will continue to suffer these losses in the future.

92. As a direct and proximate result of Defendants' violations of Michigan's WPA, Taylor has also suffered depression, emotional and physical distress, mental and physical anguish, humiliation, loss of reputation and embarrassment, and the physical manifestations of these problems, and will continue to suffer these problems in the future.

93. As a direct and proximate result of Defendants' violations of Michigan's WPA, Taylor is entitled to damages in an amount greater than $75,000.00, including actual, treble, compensatory, exemplary, special, and punitive damages, plus interest, costs, expenses, and attorney's fees.

## COUNT III
### Violation of California's Whistleblower Protection Act, Cal. Lab. Code § 1102.5
### [Against Mullen and Michery]

94. Plaintiff Taylor incorporates the preceding allegations as if fully restated below.

95. At all relevant times, Taylor was an employee as defined under California's Labor Code.

96. At all relevant times, Defendants Mullen and Michery were employers as defined under California's Labor Code.

97. California's Whistleblower Protection Act provides that "[a]n employer… shall not retaliate against an employee for disclosing information… to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation of noncompliance… if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation…" California Labor Code § 1102.5(b).

98. While employed by Mullen and Michery, Taylor engaged in protected activities under California's WPA.

99. Defendants believed that Taylor did, or would, engage in protected activity in the future.

100. Taylor engaged in protected conduct included, but was not limited to, when he disclosed to Defendants Mullen and Michery that they were in violation of the *Third Employment Contract*.

101. Defendants Mullen and Michery also had authority over Taylor.

102. Defendants Mullen and Michery had authority to investigate, discover, or correct the violations of the *Third Employment Contract*.

103. Defendants instead took adverse action and retaliated against Plaintiff because of his protected conduct by reducing or eliminating his authority and responsibilities, constructively terminating and discharging Taylor, and refusing to honor the obligations under the *Third Employment Contract.*

104. Taylor's protected conduct motivated Defendants' retaliation.

105. Defendants' retaliation against Taylor was intentional and/or was with reckless indifference to Taylor's rights.

106. As a direct and proximate result of Defendants' violations of California's WPA, Taylor has been placed in financial distress, suffered loss of wages and benefits, loss of earning capacity, and loss of ability to work; and will continue to suffer these losses in the future.

107. As a direct and proximate result of Defendants' violations of California's WPA, Taylor has suffered depression, emotional and physical distress, mental and physical anguish, humiliation, loss of reputation and embarrassment, and the physical manifestations of these problems, and will continue to suffer these problems in the future.

108. As a direct and proximate result of Defendants' violations of California's WPA, Taylor is entitled to damages in an amount greater than $75,000.00 against Mullen and Michery, including actual, treble, compensatory, exemplary, special, and punitive damages, plus interest, costs, expenses, and attorney's fees.

109. Taylor is also entitled to attorney fees and a $10,000.00 penalty for each violation of the California's WPA under California Labor Code §§ 1102.5(f)(1) and (j).

**COUNT IV**
**Violation of California's Labor Code**
**[Against Mullen and Michery]**

110. Plaintiff Taylor incorporates the preceding allegations as if fully restated below.

111. At all relevant times, Taylor was an employee as defined under California's Labor Code.

112. At all relevant times, Defendants Mullen and Michery are employers as defined under California's Labor Code.

113. Section 98.6(a) of California's Labor Code provides that: "A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including…[making] a written or oral complaint that they are owed unpaid wages,… or because of the exercise by the employee…any rights afforded to them."

114. Section 98.6(b)(1) of California's Labor Code provides that: "Any employee who is discharged, threatened with discharge, demoted, suspended, retaliated against, subjected to an adverse action, or in any other manner discriminated against in the terms and conditions of their employment because the employee engaged in any conduct delineated in this chapter…shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by those acts of the employer."

115. Further, under Section 98.6(b)(1), "If an employer engages in any action prohibited by this section within 90 days of the protected activity specified in this section, there shall be a rebuttable presumption in favor of the employee's claim."

116. Section 201(a) of California's Labor Code also requires employers to pay all wages earned and unpaid at the time of discharge.

117. Section 204 of California's Labor Code provides that all wages earned during a month are due and payable during that same month.

118. Taylor repeatedly complained to Defendants, both individually and through counsel, that he was owed unpaid wages due to Defendants' actions, omissions, and willful violation of the *Third Employment Contract*.

119. After the complaints were made, Defendants took adverse actions against Taylor by reducing or eliminating his authority and responsibilities, constructively terminating and discharging Taylor, and refusing to honor the obligations under the *Third Employment Contract.*

120. Taylor is entitled to reimbursement of his lost wages due and owing as a result of being terminated by Defendants after complaining about the violations of the *Third Employment Contract*.

121. Taylor is further entitled to a rebuttable presumption in favor of his claim given the timing of Taylor's protected activity and Defendants' actions.

122. As a direct and proximate result of Defendants' violations of California's Labor Code, Taylor has been placed in financial distress, suffered loss of wages and benefits, loss of earning capacity, and loss of ability to work; and will continue to suffer these losses in the future.

123. As a direct and proximate result of Defendants' violations of California's Labor Code, Taylor has suffered depression, emotional and physical distress, mental and physical anguish, humiliation, loss of reputation and embarrassment, and the physical manifestations of these problems, and will continue to suffer these problems in the future.

124. As a direct and proximate result of Defendants' violations of California's Labor Code, Taylor is entitled to damages in an amount greater than $75,000.00 against Mullen and Michery, including actual, treble, compensatory, exemplary, special, and punitive damages, plus interest, costs, expenses, and attorney's fees.

125. Plaintiff Taylor is also entitled to a civil penalty not exceeding $10,000.00 for each violation of California Labor Code § 98.6.

## COUNT V
### Fraudulent Misrepresentation and Fraud in the Inducement
### [Against Mullen and Michery]

126. Plaintiff Taylor incorporates the preceding allegations as if fully restated below.

127. Defendant Michery made material representations to Taylor when both the Second Employment Contract and *Third Employment Contract* were executed.

128. Michery made these material misrepresentations on behalf of himself and on behalf of Mullen.

129. Agents of Mullen other than Michery made material misrepresentations to Taylor when both the Second Employment Contract and *Third Employment Contract* were executed.

130. Those representations included, but were not limited to, the false indication that Defendants intended to perform their obligations under the Second Employment Contract and *Third Employment Contract*.

131. Those representations were false when made; Defendants failed to perform their obligations under the Second Employment Contract and *Third Employment Contract*.

132. Defendants Mullen and Michery knew the representations were false when they were made and/or made the representations with reckless disregard for their truth.

133. Defendants Mullen and Michery intended to induce Taylor to act upon the representations.

134. Taylor relied upon the representations when he executed his portion of the Second Employment Contract and *Third Employment Contract* and continued his employment with Mullen.

135. Defendants' misrepresentations caused damage to Taylor.

136. As a direct and proximate result of Defendants' fraudulent misrepresentations and fraud in the inducement, Taylor has been placed in financial distress, suffered loss of wages and benefits, loss of earning capacity, and loss of ability to work; and will continue to suffer these losses in the future.

137. As a direct and proximate result of Defendants' fraudulent misrepresentation and fraud in the inducement, Taylor has suffered depression, emotional and physical distress, mental and physical anguish, humiliation, loss of reputation and embarrassment, and the physical manifestations of these problems, and will continue to suffer these problems in the future.

138. As a direct and proximate result of Defendants' fraud, Taylor is entitled to damages in an amount greater than $75,000.00 against Mullen and Michery, including actual, treble, compensatory, exemplary, special, and punitive damages, plus interest, costs, expenses, and attorney's fees.

## REQUESTED RELIEF

**FOR THESE REASONS**, Plaintiff John Taylor respectfully requests that this Court enter a money judgment in his favor and against Defendants, jointly and severally, in an amount that the trier of fact finds Plaintiff entitled to, including, without limitation, actual, treble, compensatory, penalty, exemplary, special, and punitive damages, plus interest, costs, expenses, and statutory attorney's fees under the claims alleged.

Respectfully submitted,

/s/ Christopher A. Chesney
R.J. Cronkhite (P78374)
Christopher A. Chesney (P80969)
Cronkhite Counsel PLLC
*Attorneys for Plaintiff*
36800 Woodward Ave., Ste. 310
Bloomfield Hills, MI 48304
T: (248) 309-8602
F: (248) 256-2555
rj@cronkhitelaw.com

Dated:  October 28, 2025                    chris@cronkhitelaw.com

17

**JURY DEMAND**

Plaintiff John Taylor, through his attorneys Cronkhite Counsel PLLC, hereby demands a jury trial for all causes of action so triable by jury.

                                                Respectfully submitted,

                                                /s/ Christopher A. Chesney
                                                R.J. Cronkhite (P78374)
                                                Christopher A. Chesney (P80969)
                                                Cronkhite Counsel PLLC
                                                *Attorneys for Plaintiff*
                                                36800 Woodward Ave., Ste. 310
                                                Bloomfield Hills, MI 48304
                                                T: (248) 309-8602
                                                F: (248) 256-2555
                                                rj@cronkhitelaw.com
Dated:  October 28, 2025                      chris@cronkhitelaw.com